1   **KAYE SCHOLER LLP**
    PETER L. HAVILAND Bar Number 144967
2   JULIAN BREW Bar Number 150615
    J. RAYMOND WARNER Bar Number 207892
3   1999 Avenue of the Stars, Suite 1700
    Los Angeles, CA 90067-6048
4   Telephone:  310-788-1000
    Facsimile:  310-788-1200
5   phaviland@kayescholer.com
    jbrew@kayescholer.com
6   rwarner@kayescholer.com

7   **ROBERT S. MELONI, P.C.**
    ROBERT S. MELONI, admitted *pro hac vice*
8   RONALD W. ADELMAN, admitted *pro hac vice*
    1350 Avenue of the Americas, Suite 3100
9   New York, New York 10019
    Telephone:  212-957-3750
10  Facsimile:   646-365-3218
    robert@robertmeloni.com
11  radelman@robertmeloni.com

12  Attorneys for Plaintiff SYBERSOUND RECORDS, INC.

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15  SYBERSOUND RECORDS, INC.,          Case No. CV 05-5861 JFW (FMOx)

16                   Plaintiff,        **FIRST AMENDED COMPLAINT FOR:**

17       v.                            **(1) VIOLATION OF THE LANHAM
                                            ACT (15 U.S.C. §§ 1051, *et seq.*);**
18  UAV CORPORATION, d/b/a             **(2) COPYRIGHT INFRINGEMENT
    KAROKE BAY and d/b/a STERLING          (17 U.S.C. §§ 101, *et seq.*);**
19  ENTERTAINMENT; MADACY              **(3) VIOLATIONS OF RICO, 18 U.S.C.
    ENTERTAINMENT LP d/b/a                 § 1962(c);**
20  KAROKE PARTY; AUDIO                **(4) VIOLATIONS OF RICO, 18 U.S.C.
    STREAM, INC. d/b/a KEYNOTE             § 1962(a);**
21  KAROKE; TOP TUNES, INC.;           **(5) INTENTIONAL INTERFERENCE
    SINGING MACHINE COMPANY,               WITH PROSPECTIVE
22  INC.; BCI ECLIPSE COMPANY LLC,         ECONOMIC RELATIONS;**
    DOUGLAS VOGT, RICHARD VOGT,        **(6) UNFAIR COMPETITION (CAL.
23  AMOS ALTER, DAVID ALTER,               BUS. & PROF. CODE §§ 17200, *et*
    FRANK ROBERTSON, EDWARD                *seq.*);**
24  GOETZ, and DENNIS NORDEN,          **(7) COMMON LAW UNFAIR
                                            COMPETITION;**
25                   Defendants.       **(8) UNFAIR TRADE PRACTICES
                                            CAL. BUS. & PROF. CODE §§
26                                          17000, *et seq.*)**

27                                     **[JURY TRIAL DEMANDED]**

28                                     **HON. JOHN F. WALTER**

23183233.DOC          FIRST AMENDED COMPLAINT

## NATURE OF THE CASE

1.    Defendants in this action, producers of karaoke products, have engaged in
false advertising and misrepresentations to Plaintiff Sybersound Records, Inc.'s
("Sybersound") principal customers, including Handleman Entertainment Resources
("Handleman"), Anderson Merchandisers ("Anderson") and others.  These customers
condition their karaoke purchases on Defendants' and Sybersound's representations
that (i) all of their karaoke products are 100% licensed by each and every publisher
holding copyright interests in the musical compositions used; and (ii) all karaoke
products sold are properly accounted for and paid in full.  Defendants have falsely
advertised their compliance.  Defendants' conduct violates the Lanham Act, California
unfair competition laws, and the Copyright Act.   Defendants have also falsely accused
Sybersound of not complying with the customers' requirements, despite their
knowledge that Sybersound obtains licenses comprising 100% of the copyrighted
shares in every musical composition released on Sybersound's karaoke product lines.

2.    Defendants' repeated misrepresentations to customers and prospective
licensors through the mail and wires, and their use of illicit proceeds to undercut
Sybersound's prices and to steal Sybersound's orders and market share violate Section
1962(a) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.  §§
1961, *et seq.* ("RICO").  In addition to repeated acts of mail and wire fraud,
Defendants' copyright violations, which by their scope and pattern rise to the level of
willful, criminal activity, constitute "predicate acts" under RICO.  Sybersound seeks
substantial damages and injunctive relief for Defendants' unlawful conduct.

## PARTIES

3.    Plaintiff Sybersound Records, Inc. ("Sybersound"), is a Pennsylvania
corporation doing business in Los Angeles County, California.  Its principal place of
business is in Malibu, California.  Under its "Party Tyme Karaoke" and "Billboard Top
Ten Karaoke" lines, Sybersound produces 100% licensed karaoke recordings of
popular music.

4.      Defendant UAV Corporation, d/b/a "Karaoke Bay," and d/b/a Sterling Entertainment ("UAV") is a South Carolina corporation doing business, including the sale of infringing karaoke records, in Los Angeles County, California. Its principal place of business is at 2200 Carolina Place, Fort Mill, South Carolina 29708.

5.      Defendant Madacy Entertainment LP, d/b/a "Karaoke Party" ("Madacy") is a Canadian limited partnership doing business, including the sale of karaoke records, in Los Angeles County, California. Its principal place of business is at 3333 Graham Boulevard, Suite 102, Montreal, Quebec, Canada H3R 3L5.

6.      Defendant Audio Stream, Inc. d/b/a "All Star Karaoke," "Keynote Karaoke" and "Best Karaoke" ("Audio Stream") is an Ohio corporation doing business, including the sale of karaoke records, in Los Angeles County, California. Its principal place of business is at 4401 Lyman Drive, Hilliard, Ohio 43026.

7.      Defendant Top Tunes, Inc. ("Top Tunes") is an Ohio corporation doing business, including the sale of karaoke records, in Los Angeles County, California. Its principal place of business is at 4401 Lyman Drive, Hilliard, Ohio 43026.

8.      On information and belief, Audio Stream and Top Tunes are commonly owned and/or controlled and/or have one or more persons who were or are officers, directors, or shareholders of both corporations. On information and belief, Audio Stream is the successor to Top Tunes and was created as a vehicle to continue the business of Top Tunes under a different name in order to disguise Top Tunes' reputation for selling infringing karaoke recordings.

9.      Defendant Singing Machine Company, Inc. ("Singing Machine") is a Florida corporation doing business, including the sale of karaoke records, in Los Angeles County, California. Its principal place of business is at 6601 Lyons Road, Building A-7, Coconut Creek, Florida 33073.

10.     Defendant BCI Eclipse Company LLC ("BCI") is a Minnesota limited liability company, doing business, including the sale of karaoke records, in Los Angeles County, California. For purposes of subject matter jurisdiction under 28

U.S.C. § 1332, BCI is a citizen of Minnesota because its sole owning member, Navarre

Corporation, is a Minnesota corporation with its principal place of business at 7400

49th Ave. N., New Hope, Minnesota 55428.

11.  On information and belief, Defendant Douglas Vogt is the President of Top

Tunes and is also an employee, officer and/or director of Audio Stream.

12.  On information and belief, Defendant Richard Vogt is the Vice President of

Top Tunes and is also an employee, officer and/or director of Audio Stream.

13.  On information and belief, Defendant Amos Alter is President and Chief

Executive Officer of Madacy.

14.  On information and belief, Defendant David Alter is an officer or employee

of Madacy involved in karaoke licensing for Madacy.

15.  On information and belief, Defendant Frank Robertson is an officer or

employee of UAV, responsible for, among other things, licensing of compositions used

on UAV's karaoke recordings.

16.  On information and belief, Defendant Edward Goetz is the President of

BCI, with overall responsibility for the business of the company, including the sale of

infringing karaoke recordings as alleged herein.

17.  On information and belief, Defendant Dennis Norden is the Vice President

of Domestic Sales for Singing Machine, with overall responsibility for karaoke

products in the United States.

18.  Collectively, UAV, Madacy, Audio Stream, Top Tunes, Singing Machine,

and BCI shall be referred to herein as the "Corporation Defendants."  Collectively,

Douglas and Richard Vogt, Amos and David Alter, Edward Goetz and Frank

Robertson, shall be referred to herein as the "Individual Defendants."

## JURISDICTION AND VENUE

19.  This Court has jurisdiction over the subject matter of this action, pursuant

to 28 U.S.C. §§ 1331 and 1338(a), because plaintiff's claims arise under federal law

and/or present federal questions under the United States Copyright Act (17 U.S.C. §§

1    101, *et seq*.), the federal Lanham Act (15 U.S.C. §§ 1051, *et seq*.), and the Racketeer

2    Influenced & Corrupt Organizations Act (18 U.S.C. §§ 1962(a) and 1962(c)).  This

3    Court has original jurisdiction over Sybersound's unfair competition claims as joined

4    with its substantial and related claims under the Lanham Act, pursuant to 28 U.S.C. §

5    1338(b).  The Court has supplemental jurisdiction over Sybersound's remaining state

6    law claims as they are so related to Sybersound's other claims in this action within the

7    Court's original jurisdiction that they form part of the same case or controversy,

8    pursuant to 28 U.S.C. § 1367(a).  In addition to, and independent of these grounds, this

9    Court also has jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete

10    diversity between Plaintiff and Defendants, and the matter in controversy exceeds

11    $75,000, exclusive of interest and costs and punitive damages.

12        20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a

13    substantial part of the events giving rise to the claims asserted herein occurred in this

14    District, and also pursuant to 28 U.S.C. §§ 1391(d) and 1400(a), because Defendants

15    conduct business and have caused injury to Sybersound in this District.

16        21.    This Court has personal jurisdiction over Defendants because each of them

17    distributed or caused the sale and distribution of recordings using the compositions at

18    issue, within this State, and/or each of them regularly conducts business in this State

19    and/or participated in or directed the violations of RICO alleged herein.

## FIRST CLAIM FOR RELIEF

### (Violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.)

### (By Sybersound Against Defendants UAV, Madacy,

### Audio Stream, Top Tunes, Singing Machine and BCI)

24        22.    Sybersound incorporates by reference the allegations of paragraphs 1

25    through 21 and 47-96, as if fully set forth herein.

26        23.    The Corporation Defendants are direct competitors with Sybersound.

27    Defendants and Sybersound do not primarily market and sell their karaoke products

28    directly to the consuming public at large.  Rather, their primary customers are a limited

1  group of distributors and retailers who purchase karaoke products for resale in stores,

2  including Anderson Merchandising ("Anderson"), Handleman Entertainment

3  Resources ("Handleman"), Alliance Entertainment Corporation ("AEC"), Wal*Mart,

4  K Mart, Best Buy, Toys R Us and Fry's (collectively, "Customers"). These Customers

5  constitute the "relevant purchasing public" for Defendants and Sybersound, who

6  promote and advertise original sale of their products to these Customers primarily by

7  the representations described herein.

8      24.  Defendants' and Sybersound's Customers have adopted policies requiring

9  that each karaoke vendor make specific representations confirming that its recordings

10  use only 100% licensed compositions. This means that where one publisher owns

11  and/or controls, for example, a copyright for 5% of a composition, another owns or

12  controls a copyright for 25%, and a third owns or controls a copyright for 70%,

13  separate karaoke synchronization licenses must be obtained from each of these

14  publishers, sufficient to demonstrate authorization from a mathematical total of 100%

15  of the copyrighted shares. In the context of karaoke synchronization licenses,

16  permission for use of a 5% share does not create permission to use the remaining 95%

17  share, and karaoke reproduction is unauthorized absent obtaining licenses from each of

18  the copyright holders, adding up to 100% of the copyright interests. Customers also

19  require that up-front licensing fees, advances, and royalty payments be made in full, as

20  underreporting and underpayment of royalties have also been an historical problem in

21  the industry. Each Defendant has, in response to the Customer policies, made specific,

22  false, written and oral representations that all songs on their karaoke recordings are

23  100% licensed from all copyright holders, and that all fees and royalties are fully paid.

24      25.  Defendants' representations had a tendency to deceive, and actually

25  deceived, the Customers, and were likely to influence and in fact influenced their

26  purchasing decisions. Indeed, the Customers specifically told Defendants that they

27  would only purchase 100% fully licensed product for which all royalties have been

28  paid, and specifically requested information from Defendants on their compliance with

23183233.DOC                                    5

FIRST AMENDED COMPLAINT

1    these requirements. Defendants' representations were critical to these Customers who,

2    without the representations, would not have purchased their recordings. Defendants'

3    goods were sold in interstate commerce, and have diverted sales from Sybersound to

4    Defendants.

5        26.   In July 2002, Handleman's purchasing department contacted its karaoke

6    vendors including Sybersound, Madacy and BCI, to inform them that Handleman

7    would no longer distribute any product which contained songs with less than 100%

8    approved karaoke use. Sybersound was similarly informed by its then-distributor,

9    Warner/Electra/Atlantic ("WEA") that WEA would only distribute songs for which

10    100% of all copyrighted interests had been approved for karaoke use.

11        27.   In 2003, Handleman required each vendor of karaoke recordings to sign a

12    written "Handleman Entertainment Resources, L.L.C. Cover Song Recording; Original

13    Artist Re-recording Vendor Indemnification Agreement," in which each karaoke

14    vendor "represents that it has all the appropriate and necessary licenses in order for

15    Handleman to sell Vendor's merchandise to Handleman's customers." Handleman

16    representatives have on numerous occasions stated that this means 100% licensing of

17    all copyrighted shares in compositions which are re-recorded for karaoke use. On

18    information and belief, each of the Defendants signed such an agreement.

19        28.   In December 2004, Handleman adopted written policies applicable to all of

20    its purchases of karaoke products. Those written policies require that each karaoke

21    vendor provide, on an annual basis, written certification that it has karaoke licenses

22    from the copyright holders on all songs on each karaoke recording sold to Handleman,

23    and that "each such license is current, valid and paid in full to the date of the opinion

24    letter." Handleman representatives have also repeatedly stated that this means 100%

25    licensing of all copyrighted shares in compositions appearing on karaoke products.

26    Each of the Defendants has falsely advertised, through written certifications,

27    correspondence and oral statements, that they comply with this policy. In early 2005,

28    Handleman's General Counsel informed Sybersound that Handleman had repeatedly

23183233.DOC                                    6

Olisi

rejected Defendants' certification letters as on their face inadequate. Handleman also stated to Sybersound that each of the other karaoke vendors had failed Handleman's requests for confirmation of compliance with its licensing policies. On information and belief, Defendants responded by providing further false certifications that induced Handleman to continue to buy their products.

29. On July 13, 2004, Anderson Merchandising announced a requirement for 100% licensing of all karaoke products. The policy stated that Defendants and Sybersound were required to maintain licenses for "100%" of each song contained on Wal*Mart product sold to Anderson Merchandising since 1999. Anderson's policy also requires that karaoke vendors provide written documentation that they are fully licensed and are accurately reporting sales and accounting for royalties to copyright holders. Anderson has maintained that policy in effect through the present. Anderson's policy has also been repeated to Sybersound in other direct oral and written communications. Anderson representatives have told Sybersound that Defendants have advertised that they are in compliance with this policy.

30. In Spring 2005, Vice President Robbie De Freitus of Alliance Entertainment Corporation ("AEC"), informed Sybersound that AEC would require its karaoke vendors to comply with the same licensing policy standards as those established by Handleman. On information and belief, Defendants have misrepresented to AEC that they comply with these same licensing policy standards.

31. Other Customers also require Defendants to confirm that their karaoke products have proper karaoke synchronization licenses. In 2003, a representative from Toys R Us contacted Sybersound and advised Sybersound that he had been informed by a competitor that Sybersound was not fully licensed. Sybersound offered to and did provide copies of applicable licenses. The Toys R Us representative, in accepting those licenses, stated that similar proof of licensing would be required from Sybersound's competitors, including Defendants.

32.   In the summer of 2002, a Best Buy representative called Sybersound and indicated that Best Buy had heard, on information and belief, from UAV, that Sybersound's products were not licensed.  Sybersound provided confirmation of its licensing to Best Buy, which then confirmed that it was imposing similar requirements on other vendors.  In 2004, a Best Buy representative questioned why Sybersound was not including certain popular compositions on its releases, such as songs by the group "U2" and other current hits -- compositions which at the time were not approved for karaoke use -- but which were appearing on other vendors' releases.  In 2005, representatives of Best Buy articulated to Sybersound that Best Buy would require all karaoke vendors to provide Best Buy with copies of any attorney opinion letters, executed vendor policies, or other written documents demonstrating that the vendors complied with Handleman's 100% licensing requirements, and that Best Buy was applying the same standard.  The Best Buy representative also advised that the other karaoke vendors, including Defendants, had delivered their Handleman documentation to Best Buy.

33.   Defendants frequently represent to Customers that they are "licensed" without disclosing to the Customers that their "licenses" are from only partial holders of rights in the underlying compositions.  For example, UAV recently represented to another Customer, Fry's, that it was "licensed" to distribute songs despite the fact that it admitted in these proceedings that it had not obtained licenses from all of the publishers holding an interest in certain of those songs.

34.   On information and belief, each of the Defendants who continues to do business with Customers requiring licensing of 100% of all copyright interests has provided false or misleading information to Customers to suggest compliance with these requirements.

35.   Defendants, at various times at issue here, have based, improperly, their claims of authorization for karaoke use on requests to publishers for so-called "mechanical" or "compulsory" licenses, which may be obtained without the publisher's

23183233.DOC                                8

1   consent under the Copyright Act, and which customarily cost a fraction of the rate for a

2   karaoke synchronization license. Defendants have also claimed authorization for

3   karaoke uses by virtue of obtaining a license from one publisher of a work owned or

4   controlled by multiple publishers, sometimes asserting rights to a song based on a

5   license which on its face grants only a 5% interest in a copyrighted composition. By

6   advertising themselves to Customers as "licensed," Defendants mislead Customers into

7   believing that Defendants comply with Customers' 100% licensing policies.

8   Defendants, at various times, have also reproduced compositions not authorized for

9   any karaoke use, as alleged more fully herein.

10      36.    Defendants have also failed accurately to report and/or pay royalties, yet

11   have falsely advertised to Customers that their royalty payments cover 100% of the

12   copyright ownership interests and are current and accurate.

13      37.    Separately, Defendants include on the outside of the packaging for their

14   karaoke recordings representations that the individual sound recordings and/or karaoke

15   compilation recordings are properly copyrighted in their names, falsely advertising that

16   they have the rights from the copyright owners of the underlying musical compositions

17   to create karaoke works entitled to copyright protection.

18      38.    Madacy, for example, includes specific representations on the outside

19   labeling on its karaoke recordings that the lyrics for all songs are "used with

20   permission." Singing Machine represents on the outside labeling for its karaoke

21   recordings that "The Singing Machine, The Leader In Home Karaoke, strictly adheres

22   to all applicable music copyright and licensing laws" and that all songs are "[u]sed by

23   permission."

24      39.    The Corporation Defendants have falsely advertised the nature,

25   characteristics and qualities of their karaoke recordings to their Customers, in at least

26   the following ways:

27          a. For each karaoke recording sold to Handleman, the Corporation

28          Defendants have signed written agreements with Handleman starting in

23183233.DOC                                 9

2003 and continuing to the present, in which each of them "represents that
it has all the appropriate and necessary licenses in order for Handleman to
sell [Defendant's] merchandise to Handleman's customers."

b. From at least December 2004 to the present, for each karaoke recording
sold to Handleman, the Corporation Defendants have each provided written
certifications that they have "all necessary licenses from each applicable
music publisher or copyright owner in order to lawfully publish, distribute
and sell Products throughout the United States" and that "each such license
is current, valid and paid in full to the date of the opinion letter," reflecting
100% licensing of underlying compositions.

c. From at least July 2004 to the present, for each karaoke recording sold to
Anderson since January 1999, each Defendant has provided Anderson with
written documentation asserting that it has proper karaoke licenses for
100% of the interests from each copyright owner for each song on the
recording, and that it has properly accounted for all royalties payable to the
copyright owners.

d. All Defendants include in the outside of the packaging for their karaoke
recordings a representation that the recordings are properly copyrighted. In
fact, Defendants do not have valid copyrights in these recordings, because
they do not have permission to use all of the compositions.

e. Madacy includes a specific representation on the outside labeling on its
karaoke recordings that the lyrics for all songs are "used with permission."

f. Singing Machine represents on the outside labeling for its karaoke
recordings that "The Singing Machine, The Leader In Home Karaoke,
strictly adheres to all applicable music copyright and licensing laws" and
that all songs are "[u]sed by permission."

g. Each of the Defendants also has represented to other Customers that their
karaoke recordings contain 100% fully licensed and fully paid songs.

1

2

3

4

5

        h.  In August 2003, Madacy and UAV's licensing agent Howard Balsam disseminated a letter to major Customers of Sybersound and to publishers falsely claiming that Sybersound did not have licenses for many songs on its karaoke recordings.  On information and belief, UAV had made similar representations on other occasions.

6

7

8

9

10

11

12

13

40.    The foregoing are not representations as to the origin or authorship of copyrighted works, but representations that the Corporation Defendants are complying with Customers' policies, have licenses from holders of 100% of the copyright interests to use the underlying songs, that they are paying all royalties and fees owed for such uses to all co-owners of a particular song, and that Sybersound is not licensed. These representations were made by Defendants in competition with Sybersound, to their relevant purchasing public, for the purpose of causing Customers to buy Defendants' products and to shun Sybersound's.

14

15

16

41.    This deceptive conduct has injured Sybersound's business and illegally undercut Sybersound's competitive position.  Unless the Corporation Defendants are enjoined, there is a substantial likelihood that Sybersound will be further damaged.

17

18

19

42.    The Corporation Defendants' unlawful activities which inflict injury and the likelihood of continued injury are violations of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

20

21

43.    The Corporation Defendants' unlawful conduct and continued injury to Sybersound makes this action an "exceptional case" for the purposes of Section 43(a).

22

23

24

25

44.    Sybersound is entitled to recover the Corporation Defendants' profits from their unlawful conduct in amounts to be proven at trial; up to treble Sybersound's actual damages as determined by the discretion of the Court; Sybersound's costs; and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

26

27

45.    Sybersound is also entitled to injunctive relief pursuant to, *inter alia*, 15 U.S.C. § 1116.

28

46.    Sybersound is entitled to an order that all copies and reproductions of materials used in the violation of Section 43(a)(1)(B) be delivered up and destroyed, pursuant to 15 U.S.C. § 1118.

## SECOND CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. §§ 101, *et seq.*)

### (Against UAV, Madacy, Audio Stream, Top Tunes and BCI)

47.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 46, as if fully set forth herein.

48.    Many popular compositions which are re-recorded for karaoke use have a number of different publishers with separate copyright shares in the musical compositions, reflecting different writers' contributions to the words and music. For example, one author may hold a 5% copyright interest, another a 25% copyright interest, and a third a 70% interest. An entity wishing to make a karaoke reproduction of a musical composition must obtain written licenses authorizing such reproduction sufficient to comprise 100% of the copyrighted interests. Whether the holder of a 5% copyrighted interest has the authority to issue permission for use of the entire work, or a more limited authority to issue permission for use only of his or her limited 5% share, depends on the language of the license at issue and the understanding and/or relationship between the different publishers. It is generally understood by Customers and by music publishers that karaoke reproductions may only be made if separate written synchronization licenses are obtained from each of the separate holders of copyrighted interests in the underlying song. With respect to each of the compositions listed below, the understanding of the copyright holders was that each was only entitled to license his or her respective share alone and that a karaoke re-recording could not be made absent a written license from each publisher, whose shares are administered separately.

49.    TVT Music Publishing, Inc. ("TVT Music Publishing") was an original co-claimant and publisher of copyrights reflecting various percentage interests of musical

1   compositions identified below, all of which were duly registered with the United States

2   Copyright Office. TVT Music Publishing complied in all respects with the statutory

3   registration and deposit requirements of the Copyright Act and received from the

4   Register of Copyrights certificates of registration reflecting its possession of these

5   copyrights. As the holder of a copyright interest in each of these compositions, TVT

6   Music Publishing held the right to sue for violations of those interests with or without

7   the consent of other holders of copyrights in those compositions. TVT Music

8   Publishing also had the right to assign its ownership of its copyright interest to a third

9   party, and had the right to assign, along with that ownership interest, the right to sue to

10   enforce the assigned interest.

11       50.   Prior to commencement of this suit, TVT Music Publishing and

12   Sybersound entered into a written assignment agreement whereby TVT Music

13   Publishing transferred and assigned to Sybersound its ownership interest in the musical

14   compositions listed below (in each case for these songs, an interest which is less than

15   100% of the copyrighted interests in these compositions) for that certain divisible

16   copyright interest defined as the exclusive right to exploit TVT Music Publishing's

17   copyrights in these songs for karaoke re-recordings. A short-form assignment

18   reflecting this agreement has been duly filed/recorded with the United States Copyright

19   Office. Pursuant to that agreement, Sybersound became exclusive assignee and

20   licensee of TVT Music Publishing's copyrighted interests for purposes of karaoke use,

21   and also exclusive assignee of the right to sue to enforce the assigned copyright

22   interests, for both present and past infringements in karaoke exploitation. Those

23   interests are independent of and separately administered from any other copyright

24   holders' interests in these musical compositions.

25       51.   Defendants UAV, Madacy, Audio Stream, Top Tunes and BCI have used

26   the musical compositions identified below in their karaoke recordings without

27   obtaining a license from either TVT Music Publishing or Sybersound for Plaintiff's

28



copyrighted interests in those songs, and have failed to pay royalties for use of

Plaintiff's copyrighted interests in these songs, including the following:

| Song Title | Copyright Reg. # | Known Infringer/Album |
|---|---|---|
| Baby Boy | PA 1-131-131 | Audio Stream/Pop Best of Summer 2004<br>Audio Stream/Gal Pop Vol. 4<br>Audio Stream/Hip Hop Vol. 1 |
| Can't Hold Us Down | PA 1-143-432 | Top Tunes/Gal Pop Funpack Vol. 3 |
| Cry Me A River | PA 1-149-534 | BCI/Justin Timberlake BCI/Karaoke<br>Singles: Songs of Justin Timberlake<br>Madacy/Today's Mega Hits |
| Family Portrait | PA 1-143-423 | Audio Stream/Gal Pop Vol. 1<br>Audio Stream/Gal Pop Vol. 3<br>Audio Stream/Gal Pop Karaoke Vol. 2<br>BCI/Pink<br>BCI/Ultimate Party Songs<br>BCI/Ultimate Party Songs 24 Tracks<br>Madacy/Today's Mega Hits<br>Top Tunes/Gal Pop Vol. 3<br>Top Tunes/Gal Pop Funpack Vol. 3 |
| Fighter | PA 1-143-426 | Audio Stream/Gal Pop Vol. 4<br>Madacy/More Top Pop Hits<br>Madacy/Sing Like A Star<br>Top Tunes/Gal Pop Vol. 3<br>Top Tunes/Gal Pop Funpack Vol. 3 |
| Let Me Blow Ya Mind | PA 1-143-421 | Audio Stream/Gal Pop Vol. 1<br>Audio Stream/Gal Pop Vol. 2<br>Audio Stream/Gal Pop Vol. 3<br>Audio Stream/Gal Pop Karaoke Vol. 2<br>Top Tunes/Gal Pop Funpack Vol. 1 |
| Me Myself And I | PA 1-208-969 | UAV/Karaoke 4 Kidz Vol. Two |
| Naughty Girl | PA 1-208-974 | BCI/New Girl's Pop<br>BCI/Karaoke New Girl's Pop<br>UAV/Hip-Hop Party<br>UAV/Pop Hits 7 |
| Yeah! | PA 1-241-917 | Audio Stream/Best of Pop 2004 Vol. 1<br>Audio Stream/Best of Fall 2004 Vol. 1<br>BCI/Usher<br>BCI/Songs of: Usher<br>BCI/Karaoke Singles - Usher<br>UAV/Hip-Hop Party |

52.    Defendants UAV, Madacy, Audio Stream, Top Tunes and BCI have

willfully manufactured, distributed and sold karaoke music recordings embodying

these compositions without obtaining licenses reflecting 100% of the copyrighted

interests in these songs.

53. Defendants UAV, Madacy, Audio Stream, Top Tunes and BCI have

willfully infringed the copyrights in these compositions by directly participating in, or

otherwise enabling and encouraging, the unlawful manufacture, distribution, sale and

exploitation of the compositions.

54. Sybersound is entitled to its actual damages and the Corporation

Defendants' profits from the exploitation of the infringing works in amounts to be

proven at trial, or statutory damages at their election, pursuant to 17 U.S.C. § 504, and

to recovery of attorneys' fees, pursuant to 17 U.S.C. § 505.

55. Plaintiff is also entitled to preliminary and permanent injunctive relief,

pursuant to 17 U.S.C. § 502, and an order for impounding and destruction of all

infringing musical works pursuant to 17 U.S.C. § 503.

### THIRD CLAIM FOR RELIEF

**(Section 1962(c) of the Racketeer Influenced & Corrupt**

**Organizations Act, 18 U.S.C. § 1962(c) ("RICO"))**

**(By Sybersound Against Defendants Amos Alter, David Alter,**

**Douglas Vogt, Richard Vogt, Edward Goetz, Frank Robinson and Dennis Norden)**

56. Sybersound repeats and incorporates by reference the allegations of

paragraphs 1 through 55, as if fully set forth herein.

57. For at least the last three years, Defendants have conducted their business

through systematic, willful and criminal uses, including copying and distribution of

copyrighted musical compositions and lyrics, without obtaining licenses from 100% of

the copyright owners; systematic under-accounting and underpayment of royalties for

songs for which Defendants have licenses; systematic and repeated misrepresentations

to Customers and others that their recordings are 100% licensed and that they are

paying all royalties and other fees to all copyright holders; and misrepresentations to

Customers that Sybersound's recordings are not licensed.

58.   Defendants' illegal practices involve the musical compositions identified herein as well as infringements of compositions owned by Skronk Bonk Tunes, World House of Hits LLC, SHC LLC d/b/a Steel Wheels Music, Mark Hybner Publishing, Inc., and Logrhythm Music, for which separate complaints have been filed. Sybersound is also aware of additional acts of infringement of compositions owned by Chuck Berry, d/b/a Isalee Music, which are the subject of another action now pending in this Court, and of compositions owned by Eight Mile Style Music LLC that are the subject of yet another lawsuit pending in the Middle District of Tennessee.

59.   Some popular musical artists, who are also songwriters of the songs they made popular, and their music publishers, have generally prohibited the use of these songs in karaoke recordings. These include songs performed by such well-known artists as Madonna, Bon Jovi, U2, ABBA, Yes, Barry Gibb, Jackson Browne, Chicago, Sheryl Crow, Eagles, Hall & Oates, Jewel, Kid Rock, Led Zeppelin, Van Halen, Whitesnake and Pink Floyd. Defendants have nevertheless included such songs in karaoke recordings, despite knowing at the time of release that such uses were unauthorized.

60.   For example, Singing Machine has produced and sold karaoke discs with songs by U2, including without limitation "Beautiful Day," (Singing Machine/Karaoke Tunes) and "Stuck In A Moment You Can't Get Out Of" (Singing Machine/Karaoke Rock This, Hot Rock Vol. 2, and MTV Karaoke Rock This). Sybersound is informed and believes that these U2 songs, at the time of release, were not licensed for karaoke use. On information and belief, other such unlicensed uses include without limitation:

| Song | Artist | Unlicensed Use |
|------|--------|----------------|
| Bed of Roses | Bon Jovi | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| Thank You For Loving Me | Bon Jovi | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| It's My Life | Bon Jovi | Top Tunes/Guy Pop Vol. 1; Top Tunes/Male Pop; Top Tunes/Pop Vol. 1 |

23183233.DOC                            16

| | | |
|---|---|---|
| 1 | Bad Medicine | Bon Jovi | Madacy/Pop 80s Vol. 3 |
| 2 | Lay Your Hands On Me | Bon Jovi | Madacy/Rock 80s |
| 3 | Living On A Prayer | Bon Jovi | Madacy/Retro 70s and 80s |
| 4 | You Give Love A Bad Name | Bon Jovi | Madacy/Rock 80s |
| 5 | All About Lovin' You | Bon Jovi | Madacy/Today's Hot Hits |
| 6 | Every Day | Bon Jovi | Madacy/Today's Mega Hits |
| 7 | Hollywood | Madonna | Madacy/Today's Hot Hits; Madacy/Sing Like A Star |
| 8 | American Life | Madonna | Madacy/More Top Pop Hits |
| 9 | Don't Tell Me To Stop | Madonna | BCI/The Songs of Madonna Vol. 2 |
| 10 | Music | Madonna | BCI/The Songs of Madonna Vol. 2 |
| 11 | Music | Madonna | Top Tunes/Pop Vol. 1 |
| 12 | Beautiful Stranger | Madonna | BCI/90s Women in Music Vol. 2; BCI/Madonna Vol. 2 |
| 13 | Nothing Really Matters | Madonna | BCI/Madonna Vol. 2 |
| 14 | Ray Of Light | Madonna | Top Tunes/The 90s Funpack Vol. 2 |
| 15 | Dancing Queen | ABBA | BCI/The Songs of ABBA |
| 16 | Knowing Me, Knowing You | ABBA | BCI/The Songs of ABBA |
| 17 | Take A Chance On Me | ABBA | BCI/The Songs of ABBA |
| 18 | The Name Of The Game | ABBA | BCI/The Songs of ABBA |
| 19 | The Winner Takes It All | ABBA | BCI/The Songs of ABBA |
| 20 | Dancing Queen | ABBA | Top Tunes/Funpack: The 70s Vol. 1 |
| 21 | Dancing Queen | ABBA | Madacy/Retro 70s and 80s |
| 22 | Doctor My Eyes | Jackson Browne | UAV/Singers & Songwriters |
| 23 | Babylon | David Gray | Singing Machine/MTV Wanna Be A Rockster |
| 24 | Lose Yourself | Eminem | Madacy/Movie Hits |
| 25 | Lose Yourself | Eminem | Singing Machine/MTV Representin' Hip Hop |

| | | |
|---|---|---|
| Lose Yourself | Eminem | Top Tunes/Multiplex Eminem; Top Tunes/Rock Funpack Vol. 3 |
| Without Me | Eminem | Madacy/R&B Hits |
| Steve McQueen | Sheryl Crow | Singing Machine/MTV Pop Favorites |
| All I Wanna Do | Sheryl Crow | Top Tunes/The 90s Funpack Vol. 2 |
| If It Makes You Happy | Sheryl Crow | Madacy/Ladies of Pop |
| Stairway To Heaven | Led Zeppelin | Top Tunes/Funpack: The 70s Vol. 1 |
| When It's Love | Van Halen | Madacy/Rock 80s |
| Another Brick In The Wall | Pink Floyd | Audio Stream (All Star)/The 80s Vol. 1; Audio Stream (All Star)/The 80s Vol. 2; Audio Stream (Best Karaoke)/The 80s Vol. 2 |
| Another Brick In The Wall | Pink Floyd | Madacy/Rock 80s |
| Electrical Storm | U2 | Madacy/More Today's Mega Hits |
| With Or Without You | U2 | Top Tunes/The 80s Funpack Vol. 1; Top Tunes/Karaoke The 80s 2 Disc Funpack |
| With Or Without You | U2 | Madacy/Pop 80s Vol. 1 |
| Beautiful Day | U2 | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| Beautiful Day | U2 | UAV/Sing U2 |
| Beautiful Day | U2 | Singing Machine/Karaoke Pop Tunes; Singing Machine/Karaoke Rock Vol. 8; Singing Machine/MTV Rock Hits Vol. 8; Singing Machine/MTV New Ballads Of Rock; Singing Machine/MTV 16 Songs |
| Stuck In A Moment | U2 | Top Tunes/Guy Pop Funpack Vol. 2 |
| Stuck In A Moment | U2 | UAV/Sing U2 |
| Stuck In A Moment | U2 | Singing Machine/MTV Rock This; Singing Machine/MTV Pop & Roll |

| | | |
|---|---|---|
| Walk On | U2 | UAV/Sing U2 |
| With Or Without You | U2 | UAV/Sing U2 |
| Jump | Van Halen | Singing Machine/MTV 80s All Stars;<br>Singing Machine/MTV80s Rockers |
| Jump | Van Halen | Audio Stream (All Star)/The 80s Vol. 1;<br>Audio Stream (All Star)/The 80s Vol. 2;<br>Audio Stream (All Star)/Party Vol. 3;<br>Audio Stream (All Star)/Party Vol. 3(2);<br>Audio Stream (All Star)/Party Songs Vol. 4;<br>Audio Stream (Best Karaoke)/The 80s Vol. 2 |
| Brown Eyed Girl | Van Morrison | Top Tunes/Late 60s Funpack |
| Brown Eyed Girl | Van Morrison | Singing Machine/Cool Classics Vintage 60s |

61.    For years, Defendants have used piracy and underpayment of fees and royalties as their regular method of operation to cut costs, gain market share and steal business from lawful competitors, including Sybersound. While many copyright holders more recently have begun to bring their own lawsuits for infringements, this does not undo the damage and unfair competitive advantage that Defendants' conduct already has caused competitors like Sybersound.

62.    Carl Craig, an owner of Top Tunes, has admitted to representatives of Sybersound that Top Tunes and its predecessors and successors have engaged in systematic infringing use of compositions in karaoke recordings. He has also admitted that, to conceal the infringing activities, the enterprise in which he has been involved changes its name periodically. Mr. Craig has admitted this pattern to Sybersound, summarizing the practices with words to the effect of: "Never pay the publishers, just pretend to. If you get caught, act like it was an oversight, and pay them something. If you get sued, offer to settle; and if you get sued really bad, then just change the name of the company."

63.   In or about July 2002, Madacy employee David Alter admitted to Sybersound that Madacy had been able only to obtain 36 karaoke synchronization licenses.  He later stated that obtaining karaoke synchronization licenses was "too much trouble;" and that he intended to release karaoke records with only mechanical licenses from that point on.  In early 2005, Handleman confirmed that Madacy had only obtained mechanical licenses for its karaoke products.

64.   In or about 2004, Eight Mile Style LLC, the music publisher of the song "lose yourself," made famous by Eminem, discovered that Singing Machine had used it in one of its karaoke compilation albums, and demanded that Singing Machine cease and desist from the continued use of that song.  Although no license was ever issued by Eight Mile Style, and no settlement of that claim was ever reached, Singing Machine continued to sell and/or market that karaoke recording.

65.   In addition to outright infringements or payment of mechanical royalties instead of full karaoke royalties, Defendants -- including BCI and UAV -- regularly obtain only a partial license from one co-claimant of a copyrighted composition, providing for payment of that co-claimant's prorated share of royalties only, with no provision for payment of royalties to the other co-claimants from whom they have not obtained licenses.  Defendants do so, despite knowing that it is the practice and understanding among copyright holders that each co-claimant administers only its own share of each song, and collects only its own pro rata share of license royalties and fees (and not the shares owned by the non-licensing co-claimants), and that any use of a composition requires permission from all of the co-claimants for 100% of the copyright interests.

66.   To obtain such licenses, Defendants represent to the partial licensor that they will obtain separate licenses from all other co-claimants of the copyright providing for payment of the co-claimants' prorated shares, and that they will not use the licensed song unless and until they have licenses from all co-claimants.  These licenses often also are for worldwide use, and such worldwide licenses generally

1    require consent from all co-claimants for any use since, among other reasons, the

2    copyright laws of the relevant jurisdictions require 100% co-claimant consent for all

3    licenses, whether or not they are exclusive.

4        67.   Many of the Defendants obtain "blanket licenses" from major music

5    publishers like EMI Music Publishing, Universal Music Publishing, Warner-Chappell

6    Music Publishing, Sony Music Publishing and BMG Music Publishing for songs for

7    which they are co-claimants. In most cases, however, the musical compositions used

8    by the Defendants and other karaoke producers are only partially owned or controlled

9    by these major publishers. For these partially owned or controlled musical

10   compositions, major music publishers do not want to undertake responsibility of

11   collecting 100% of the royalties and fees for the uses covered by their blanket licenses,

12   and then account to the other copyright co-claimants for their ratable share, which is a

13   legal duty of any copyright co-owner who issues a license without the consent of the

14   other co-owners. For that reason, and for the additional reason that most countries

15   require consent from all co-claimants for any copyright license, those "blanket

16   licenses" generally provide that they are sufficient only for the licensor's share of the

17   copyright and are conditioned on Defendants also obtaining separate licenses from the

18   other co-claimants providing for payment of fees and royalties directly to each co-

19   claimant. Publisher representatives from EMI, Sony, Warner-Chappell and Universal

20   have specifically told licensees, including Sybersound, that they must obtain

21   authorization from all co-claimants before publishing their songs in karaoke format,

22   and that failure to do so constitutes copyright infringement.

23       68.   Despite this requirement, Defendants often use compositions under these

24   "blanket licenses" without obtaining licenses or authorizations from other co-claimants

25   and without paying fees or royalties to other co-claimants. On information and belief,

26   Defendants falsely represent to the major music publishers for which they have these

27   "blanket licenses" that they will comply and are complying with the requirement that

28   they obtain licenses from all other co-claimants.

23183233.DOC

21

69.   Even when they obtain proper karaoke licenses for certain compositions, Defendants continue their fraudulent practice of avoiding lawfully required royalty expenses by providing their licensors with false accountings that underreport sales and underpay royalties for their use of the compositions.  Various music publishers have reported to Sybersound that, even for songs for which they have proper or partial karaoke licenses to Defendants at the same royalty rates as Sybersound, they receive substantially lower royalty payments from Defendants, despite significantly higher sales.  On information and belief, Defendants routinely underpay royalties for songs for which they have proper karaoke licenses.

70.   Even though Defendants have engaged in unlawful copying of copyrighted compositions and underpayment of royalties under licenses for other compositions, Defendants UAV and Madacy have engaged in systematic efforts to divert attention from their own unlawful activity by falsely representing to customers and publishers that Sybersound's recordings infringe copyrights.  Contrary to these representations, Sybersound uses only songs for which it has 100% licenses from all of the co-claimants, and pays full royalties for all of its karaoke uses.

71.   From 2002 through the present, representatives of UAV have repeatedly told Sybersound's customers that Sybersound's karaoke albums were not licensed, with no factual basis for such assertions.  This has led Sybersound customers repeatedly to demand proof from Sybersound of its licensing status.  While Sybersound has, in each instance, provided such proof, the misrepresentations that its recordings are infringing has disrupted and caused it to lose business.

72.   In or about August 2002, Howard Balsam, acting as licensing agent for Madacy and UAV, sent "cease and desist" letters by facsimile and mail to several Sybersound Customers, including Wal*Mart, K-Mart, Handleman, and Anderson, and to publishers, including EMI and Sony, falsely asserting that Sybersound's karaoke recordings infringed unspecified copyrights.  The letters also failed to disclose that they were being sent on behalf of a Sybersound competitor.  Amos and David Alter of

1    Madacy subsequently admitted that Balsam's letters were sent with their knowledge

2    and consent. While Sybersound ultimately was able to demonstrate to its customers

3    that the letter was false, this disrupted Sybersound's business, resulting in lost sales.

4        73.   On information and belief, in approximately late 2002, representatives of

5    UAV falsely represented to Sybersound customer Best Buy that Sybersound was

6    selling unlicensed product, likewise resulting in lost sales and expenses incurred in

7    demonstrating that Sybersound in fact had authorizations for all of its compositions.

8        74.   Through these unlawful activities, Defendants have generated tens of

9    millions of dollars in revenue from the sale of karaoke recordings, and from their

10   failure to pay required royalties. On information and belief, Defendants have used the

11   proceeds from their unlawful activities to unfairly undercut the prices of and steal

12   market share from lawful karaoke vendors like Sybersound.

13       75.   Each of Defendants Amos Alter, David Alter, Douglas Vogt, Richard Vogt,

14   Edward Goetz, Frank Robertson and Dennis Norden is a "person" within the meaning

15   of 18 U.S.C. §§ 1961(3) & (4).

16       76.   For at least the last four years, each of the Individual Defendants has been

17   associated with one of the Corporation Defendants, as alleged in greater detail herein.

18   Each of the Corporation Defendants is a corporation or other legal entity, and therefore

19   an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

20       77.   As alleged in greater specificity herein, each of the Individual Defendants

21   has participated in his respective enterprise through a pattern of racketeering activities,

22   including without limitation repeated acts of criminal copyright infringement in

23   violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319, violations of the federal mail

24   fraud and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, and other violations of state

25   and federal law prohibited by 18 U.S.C. § 1962.

26       78.   Douglas Vogt and Richard Vogt are, respectively, President and Vice

27   President of Top Tunes and employees, officers and/or directors of Audio Stream. For

28   at least the last three years, Douglas and Richard Vogt have conducted Top Tunes' and

1    Audio Stream's business through a pattern of racketeering activity, including at least

2    the following predicate acts:

3        a. Repeated criminal violations of the copyright laws on Top Tunes and Audio

4           Stream karaoke recordings, under 17 U.S.C. § 506(a) and 18 U.S.C. §

5           2319.  Each copyrighted work was copied and distributed at least 10 times

6           in a 180-day period, with a total retail value far more than $2,500 for each

7           copyrighted work, including without limitation the following

8           infringements:

| Song Title | Known Infringer/Album(s) |
|---|---|
| My Ding-A-Ling | Top Tunes/The 70's Volume 02 |
| How Am I Doin' | Audio Stream/Best of Spring 2005: Country Vol. 1<br>Audio Stream/Country Vol. 2 |
| Nothin' 'Bout Love Makes Sense | Audio Stream/Best of Spring 2005: Country Vol. 1<br>Audio Stream/Country Vol. 2 |
| Baby Boy | Audio Stream/Pop Best of Summer 2004<br>Audio Stream/Gal Pop Vol. 4<br>Audio Stream/Hip Hop Vol. 1 |
| Can't Hold Us Down | Top Tunes/Gal Pop Funpack Vol. 3 |
| Family Portrait | Audio Stream/Gal Pop Vol. 1<br>Audio Stream/Gal Pop Vol. 3<br>Audio Stream/Gal Pop Karaoke Vol. 2<br>Top Tunes/Gal Pop Vol. 3<br>Top Tunes/Gal Pop Funpack Vol. 3 |
| Fighter | Audio Stream/Gal Pop Vol. 4<br>Top Tunes/Gal Pop Vol. 3<br>Top Tunes/Gal Pop Funpack Vol. 3 |
| Let Me Blow Ya Mind | Audio Stream/Gal Pop Vol. 1<br>Audio Stream/Gal Pop Vol. 2<br>Audio Stream/Gal Pop Vol. 3<br>Audio Stream/Gal Pop Karaoke Vol. 2<br>Top Tunes/Gal Pop Funpack Vol. 1 |
| Yeah! | Audio Stream/Best of Pop 2004 Vol. 1<br>Audio Stream/Best of Fall 2004 Vol. 1 |

FIRST AMENDED COMPLAINT

| | |
|---|---|
| Bed of Roses | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| Thank You For Loving Me | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| It's My Life | Top Tunes/Guy Pop Vol. 1; Top Tunes/Male Pop; Top Tunes/Pop Vol. 1 |
| Music | Top Tunes/Pop Vol. 1 |
| Ray Of Light | Top Tunes/The 90s Funpack Vol. 2 |
| Dancing Queen | Top Tunes/Funpack: The 70s Vol. 1 |
| Lose Yourself | Top Tunes/Multiplex Eminem; Top Tunes/Rock Funpack Vol. 3 |
| All I Wanna Do | Top Tunes/The 90s Funpack Vol. 2 |
| Stairway To Heaven | Top Tunes/Funpack: The 70s Vol. 1 |
| Another Brick In The Wall | Audio Stream (All Star)/The 80s Vol. 1; Audio Stream (All Star)/The 80s Vol. 2; Audio Stream (Best Karaoke)/The 80s Vol. 2 |
| With Or Without You | Top Tunes/The 80s Funpack Vol. 1; Top Tunes/Karaoke The 80s 2 Disc Funpack |
| Beautiful Day | Top Tunes/Guy Pop Funpack Vol. 1; Top Tunes/Male Pop |
| Stuck In A Moment | Top Tunes/Guy Pop Funpack Vol. 2 |
| Brown Eyed Girl | Top Tunes/Late 60s Funpack |
| Jump | Audio Stream (All Star)/The 80s Vol. 1; Audio Stream (All Star)/The 80s Vol. 2; Audio Stream (All Star)/Party Vol. 3; Audio Stream (All Star)/Party Vol. 3(2); Audio Stream (All Star)/Party Songs Vol. 4; Audio Stream (Best Karaoke)/The 80s Vol. 2 |

FIRST AMENDED COMPLAINT

b.  Carl Craig, the former owner of Top Tunes, has admitted that it is the
    general business practice of Top Tunes and Audio Stream to use songs
    without proper authorization from copyright holders, to pay royalties only
    when infringements are discovered, and even then to pay only a fraction of
    what is actually owed.

c.  On information and belief, for each karaoke recording sold to Handleman,
    starting in 2003 through the present, Top Tunes and Audio Stream signed
    written agreements in which each "represents that it has all the appropriate
    and necessary licenses in order for Handleman to sell [its] merchandise to
    Handleman's customers," reflecting licensing of 100% of the copyrighted
    interests. On information and belief, this agreement was transmitted by
    wires or mail, for the purpose of defrauding Handleman of its money and
    property, in violation of 18 U.S.C. §§ 1341 & 1343.

d.  On information and belief, from at least December 2004 to the present, for
    each karaoke recording sold to Handleman, Top Tunes and Audio Stream
    have provided written certifications that they have "all necessary licenses
    from each applicable music publisher or copyright owner in order to
    lawfully publish, distribute and sell Products throughout the United States"
    and that "each such license is current, valid and paid in full to the date of
    the opinion letter," representing licensing of 100% of the copyrighted
    interests. On information and belief, these were transmitted by wires or
    mails, for the purpose of defrauding Handleman of its money and property,
    in violation of 18 U.S.C. §§ 1341 & 1343.

e.  On information and belief, from at least July 2004 to the present, for each
    karaoke recording sold to Anderson since January 1999, Top Tunes and
    Audio Stream have provided Anderson with written documentation
    asserting that they have karaoke licenses for 100% of all copyrighted
    interests from each copyright owner for each song on the recording, and

they have properly accounted for all royalties to the copyright owners. On information and belief, some or all of this documentation was transmitted by wire (including without limitation facsimile) or mails for the purpose of defrauding Anderson of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

f.  On information and belief, Top Tunes and Audio Stream have underreported sales and royalties to licensors from whom it has obtained karaoke licenses, including in written accounting and royalty statements transmitted through the wires and the mails, for the purpose of depriving the licensors of their money and property, in violation of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343.

g.  On information and belief, for at least the last three years, Top Tunes and Audio Stream have regularly represented to copyright holders for split copyright compositions from whom they seek licenses that they will not use the songs unless and until they have obtained licenses from all co-claimants of the composition. On information and belief, these representations have been made by mails and wires for the purpose of defrauding the copyright holders of their money and property. In fact, Top Tunes and Audio Stream regularly use compositions even when they do not have licenses from all copyright holders. This constitutes a series of further acts of mail and/or wire fraud under 18 U.S.C. §§ 1341 & 1343.

79.  Amos Alter is the President and Chief Executive Officer of Madacy, and David Alter is an officer and/or employee of Madacy responsible for production of infringing karaoke recordings by Madacy. For at least the last three years, Amos and David Alter have conducted Madacy's business through a pattern of racketeering activity, including at least the following predicate acts:

a.  Repeated criminal violations of the copyright laws on Madacy karaoke recordings, under 17 U.S.C. § 506(a), and 18 U.S.C. § 2319. Each

copyrighted work was copied and distributed at least 10 times in a 180-day period, with a total retail value far more than $2,500 for each copyrighted work, including without limitation the following infringements:

| Song Title | Known Infringer/Album(s) |
|---|---|
| Maybelline | Madacy/Rock & Roll Classics Madacy/ Rock & Roll |
| Miss Independent | Madacy/Today's Hot Hits Madacy/Sing Like A Star |
| Cry Me A River | Madacy/Today's Mega Hits |
| Family Portrait | Madacy/Today's Mega Hits |
| Fighter | Madacy/More Top Pop Hits Madacy/Sing Like A Star |
| Bad Medicine | Madacy/Pop 80s Vol. 3 |
| Lay Your Hands On Me | Madacy/Rock 80s |
| Living On A Prayer | Madacy/Retro 70s and 80s |
| You Give Love A Bad Name | Madacy/Rock 80s |
| Hollywood | Madacy/Today's Hot Hits; Madacy/Sing Like A Star |
| American Life | Madacy/More Top Pop Hits |
| Dancing Queen | Madacy/Retro 70s and 80s |
| Lose Yourself | Madacy/Movie Hits |
| When It's Love | Madacy/Rock 80s |
| Another Brick In The Wall | Madacy/Rock 80s |
| Electrical Storm | Madacy/More Today's Mega Hits |
| With Or Without You | Madacy/Pop 80s Vol. 1 |
| If It Makes You Happy | Madacy/Ladies of Pop |
| Without Me | Madacy/R&B Hits |
| All About Lovin' You | Madacy/Today's Hot Hits |
| Every Day | Madacy/Today's Mega Hits |

b. Both David and Amos Alter have admitted that Madacy engages in a regular practice of relying on mechanical licenses even though Amos and David Alter know that this is insufficient for karaoke use, and fail to inform publishers that the mechanical licenses will be used for karaoke use.

c. On information and belief, for each karaoke recording sold to Handleman, starting in 2003 through the present, Madacy has signed written agreements in which it "represents that it has all the appropriate and necessary licenses in order for Handleman to sell [its] merchandise to Handleman's customers," reflecting licensing of 100% of the copyrighted interests. On information and belief, this agreement was transmitted by wires or mail, for the purpose of defrauding Handleman of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

d. On information and belief, from at least December 2004 to the present, for each karaoke recording sold to Handleman, Madacy has provided written certifications that it has "all necessary licenses from each applicable music publisher or copyright owner in order to lawfully publish, distribute and sell Products throughout the United States" and that "each such license is current, valid and paid in full to the date of the opinion letter," reflecting licensing of 100% of the copyrighted interests. On information and belief, these were transmitted by wires or mails, for the purpose of defrauding Handleman of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

e. On information and belief, from at least July 2004 to the present, for each karaoke recording sold to Anderson since January 1999, Madacy has provided Anderson with written documentation asserting that it has karaoke licenses for 100% of all copyrighted interests from each copyright owner for each song on its recordings, and it has properly accounted for all royalties to the copyright owners. On information and belief, some or all

23183233.DOC
29

of this documentation was transmitted by wire (including without
limitation facsimile) or mails, for the purpose of defrauding Anderson of its
money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

**f.**  On information and belief, Madacy has underreported sales and royalties to
licensors from whom it has obtained karaoke licenses, including in written
accounting and royalty statements transmitted through the wires and the
mails, for the purpose of depriving the licensors of their money and
property, in violation of the federal mail fraud and wire fraud statutes, 18
U.S.C. §§ 1341 & 1343.

g.  In or about August 2002, Madacy's licensing agent Howard Balsam, sent
"cease and desist" letters by facsimile and mail to several Sybersound
customers -- including K-Mart, Wal*Mart, Handleman, and Anderson --
and publishers -- including EMI and Sony -- falsely asserting that
Sybersound's karaoke recordings infringed unspecified copyrights.  The
letters also failed to disclose that they were being sent on behalf of a
Sybersound competitor.  These letters were sent for the purpose of
defrauding Sybersound's customers of their money and property by
diverting sales to Madacy.  This constitutes a series of further acts of mail
and/or wire fraud under 18 U.S.C. §§ 1341 & 1343.

h.  Madacy includes on the outside of the packaging for its karaoke recordings
a representation that the recordings are properly copyrighted.  In fact,
Madacy does not have valid copyrights in these recordings, because it does
not have permission to use all of the compositions.  On information and
belief, some or all of these packages were transmitted through the mails for
the purpose of defrauding purchasers of the recordings of their money and
property, in violation of 18 U.S.C. §§ 1341 & 1343.

i.  The packaging for Madacy's karaoke recordings also include the specific
false representation that the song lyrics in those recordings are used "with

23183233.DOC

30

FIRST AMENDED COMPLAINT

permission" of the copyright holders.  On information and belief, some or
all of these packages were transmitted through the mails for the purpose of
defrauding purchasers of the recordings of their money and property, in
violation of 18 U.S.C. §§ 1341 & 1343.

j.  On information and belief, for at least the last three years, Madacy has
regularly represented to copyright holders for split copyright compositions
from whom it is seeking licenses that it will not use their songs unless and
until it has obtained licenses from all co-claimants of the composition.  On
information and belief, these representations have been made by mails and
wires for the purpose of defrauding the copyright holders of their money
and property.  In fact, Madacy regularly uses compositions even when it
does not have licenses from all copyright holders.  This constitutes a series
of further acts of mail and/or wire fraud under 18 U.S.C. §§ 1341 & 1343.

80.  Defendant UAV employs agents, including Frank Robertson, responsible
for licensing use of compositions on UAV's karaoke recordings, and providing
information and representations concerning authorizations to UAV's customers.  For at
least the last three years, said agents have conducted UAV's business through a pattern
of racketeering activity, including at least the following predicate acts:

a.  Repeated criminal violations of the copyright laws on UAV karaoke
recordings, under 17 U.S.C. § 506(a), and 18 U.S.C. § 2319.  Each
copyrighted work was copied and distributed at least 10 times in a 180-day
period, with a total retail value far more than $2,500 for each copyrighted
work, including without limitation the following infringements:

| Song Title | Known Infringer/Album(s) |
| --- | --- |
| Johnny B. Goode | UAV/Jukebox Favorites:  Fabulous Fifties |
| Me Myself And I | UAV/Karaoke 4 Kidz Vol. Two |
| Naughty Girl | UAV/Hip-Hop Party |
| | UAV/Pop Hits 7 |

| | |
|---|---|
| Yeah! | UAV/Hip-Hop Party |
| Doctor My Eyes | UAV/Singers & Songwriters |
| Beautiful Day | UAV/Sing U2 |
| Stuck In A Moment | UAV/Sing U2 |
| Walk On | UAV/Sing U2 |
| With Or Without You | UAV/Sing U2 |

b. On information and belief, during at least the last three years, UAV engaged in a systematic business practice of willfully and intentionally using copyrighted compositions on its karaoke recordings, without licenses or permission from the copyright holders.

c. On information and belief, for each karaoke recording sold to Handleman, starting in 2003 through the present, UAV has signed a written agreements in which it "represents that it has all the appropriate and necessary licenses in order for Handleman to sell [UAV's] merchandise to Handleman's customers," reflecting licensing of 100% of the copyrighted interests. On information and belief, this agreement was transmitted by the wires and/or mail, for the purpose of defrauding Handleman of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

d. On information and belief, from at least December 2004 to the present, for each karaoke recording sold to Handleman, UAV has provided a written certifications that it has "all necessary licenses from each applicable music publisher or copyright owner in order to lawfully publish, distribute and sell Products throughout the United States" and that "each such license is current, valid and paid in full to the date of the opinion letter," reflecting licensing of 100% of the copyrighted interests. On information and belief, this was transmitted by wires and/or mail, for the purpose of defrauding Handleman of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

e. On information and belief, from at least July 2004 to the present, for each karaoke recording sold to Anderson since January 1999, UAV has provided Anderson with written documentation asserting that it has proper karaoke licenses for 100% of all copyrighted interests from each copyright owner for each song on the recording, and that it has properly accounted for all royalties to the copyright owners. On information and belief, some or all of this documentation was transmitted by wire (including without limitation facsimile) or mails, for the purpose of defrauding Anderson of its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

f. UAV includes on the outside of the packaging for its karaoke recordings a representation that the recordings are properly copyrighted. In fact, UAV does not have valid copyrights in these recordings, because it does not have permission to use all of the compositions. On information and belief, some or all of these packages were transmitted through the mails for the purpose of defrauding purchasers of the recordings of their money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

g. On information and belief, UAV has underreported sales and royalties to licensors from whom it has obtained karaoke licenses, including in written accounting and royalty statements transmitted through the wires or the mails, for the purpose of depriving the licensors of their money and property, in violation of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343.

h. On information and belief, in 2002, in an attempt to interfere with Sybersound's business, UAV paid Sybersound's licensing agent, Dara Lupowitz, a sum of $100,000 to cease providing licensing services for Sybersound, to provide instead licensing services for UAV, and to secretly provide confidential information concerning Sybersound's licensing.

i.  From 2002 through the present, UAV, through its representatives, falsely
    represented to Sybersound's customers, including Best Buy, Handleman
    and Anderson, that Sybersound's karaoke recordings infringed copyrights.
    These representations were made, including by mails and wires for the
    purpose of defrauding Sybersound's customers of their money and property
    by diverting sales to UAV, and constitute further acts of mail and/or wire
    fraud under 18 U.S.C. §§ 1341 & 1343.

j.  In or about August 2002, UAV's licensing agent Howard Balsam, sent
    "cease and desist" letters by facsimile, wires and/or mail to several
    Sybersound customers -- including K-Mart, Wal*Mart, Handleman, and
    Anderson -- and publishers -- including EMI and Sony -- falsely asserting
    that Sybersound's karaoke recordings infringed unspecified copyrights.
    The letters also failed to disclose that they were being sent on behalf of a
    Sybersound competitor.  These letters were sent to defraud Sybersound's
    customers of their money and property by diverting sales to UAV.  This
    constitutes a series of further acts of mail and/or wire fraud under 18
    U.S.C. §§ 1341 & 1343.

k.  On information and belief, for at least the last three years, UAV has
    regularly represented to copyright holders for split copyright compositions
    from whom it is seeking licenses that it will not use their songs unless and
    until it has obtained licenses from all co-claimants of the composition.  On
    information and belief, these representations have been made by mails and
    wires for the purpose of defrauding the copyright holders of their money
    and property.  In fact, UAV regularly uses compositions even when it does
    not have licenses from all copyright holders.  This constitutes a series of
    further acts of mail and/or wire fraud under 18 U.S.C. §§ 1341 & 1343.

81.    Edward Goetz is the President of BCI.  For at least the last three years, Edward Goetz has conducted BCI's business through a pattern of racketeering activity, including at least the following predicate acts:

    a.    Repeated criminal violations of the copyright laws on BCI karaoke recordings, under 17 U.S.C. § 506(a), and 18 U.S.C. § 2319.  Each copyrighted work was copied and distributed at least 10 times in a 180-day period, with a total retail value far more than $2,500 for each copyrighted work, including without limitation the following infringements:

| Song Title | Known Infringer/Album(s) |
| --- | --- |
| Cry Me A River | BCI/Justin Timberlake<br>BCI/Karaoke Singles: Songs of Justin Timberlake |
| Family Portrait | BCI/Pink<br>BCI/Ultimate Party Songs<br>BCI/Ultimate Party Songs 24 Tracks |
| Naughty Girl | BCI/New Girl's Pop<br>BCI/Karaoke New Girl's Pop |
| Yeah! | BCI/Usher<br>BCI/Songs of: Usher<br>BCI/Karaoke Singles - Usher |
| Don't Tell Me To Stop | BCI/The Songs of Madonna Vol. 2 |
| Music | BCI/The Songs of Madonna Vol. 2 |
| Dancing Queen | BCI/The Songs of ABBA |
| Knowing Me, Knowing You | BCI/The Songs of ABBA |
| Take A Chance On Me | BCI/The Songs of ABBA |
| The Name Of The Game | BCI/The Songs of ABBA |
| The Winner Takes It All | BCI/The Songs of ABBA |
| The First Cut Is The Deepest | BCI/Women of Rock |
| Beautiful Stranger | BCI/90s Women in Music Vol. 2;<br>BCI/Madonna Vol. 2 |
| Nothing Really Matters | BCI/Madonna Vol. 2 |

23183233.DOC

35

b.  On information and belief, for each karaoke recording sold to Handleman,
    starting in 2003 through the present, BCI has signed written agreements in
    which it "represents that it has all the appropriate and necessary licenses in
    order for Handleman to sell [its] merchandise to Handleman's customers,"
    reflecting licensing of 100% of the copyrighted interests. On information
    and belief, this agreement was transmitted by wires or mail, for the purpose
    of defrauding Handleman of its money and property, in violation of 18
    U.S.C. §§ 1341 & 1343.

c.  On information and belief, from at least December 2004 to the present, for
    each karaoke recording sold to Handleman, BCI has provided written
    certifications that it has "all necessary licenses from each applicable music
    publisher or copyright owner in order to lawfully publish, distribute and
    sell Products throughout the United States" and that "each such license is
    current, valid and paid in full to the date of the opinion letter," reflecting
    100% of the copyrighted interests. On information and belief, these were
    transmitted by wires or mails, for the purpose of defrauding Handleman of
    its money and property, in violation of 18 U.S.C. §§ 1341 & 1343.

d.  On information and belief, from at least July 2004 to the present, for each
    karaoke recording sold to Anderson since January 1999, BCI has provided
    Anderson with written documentation asserting that it has karaoke licenses
    for 100% of all copyrighted interests from each copyright owner for each
    song on its recordings, and it has properly accounted for all royalties to the
    copyright owners. On information and belief, some or all of this
    documentation was transmitted by facsimile or mail, for the purpose of
    defrauding Anderson of its money and property, in violation of 18 U.S.C.
    §§ 1341 & 1343.

e.  On information and belief, BCI has underreported sales and royalties to
    licensors from whom it has obtained karaoke licenses, including in written

23183233.DOC                                36

accounting and royalty statements transmitted by wire (including without
limitation facsimile) or mails, in violation of the federal mail fraud and
wire fraud statutes, 18 U.S.C. §§ 1341 & 1343. This practice has included
dumping karaoke CD's to retailers for as little as $.75 per unit, without
accounting or payment of royalties on these sales.

f.  BCI includes on the outside of the packaging for its karaoke recordings a
representation that the recordings are properly copyrighted. In fact, BCI
does not have valid copyrights in these recordings, because it does not have
permission to use all of the compositions. On information and belief, some
or all of these packages were transmitted through the mails for the purpose
of defrauding purchasers of the recordings of their money and property, in
violation of 18 U.S.C. §§ 1341 & 1343.

g.  On information and belief, for at least the last three years, BCI has
regularly represented to copyright holders for split copyright compositions
from whom it is seeking licenses that it will not use their songs unless and
until it has obtained licenses from all co-claimants of the composition. On
information and belief, these representations have been made by mails and
wires for the purpose of defrauding the copyright holders of their money
and property. In fact, BCI regularly uses compositions even when it does
not have licenses from all copyright holders. This constitutes a series of
further acts of mail and/or wire fraud under 18 U.S.C. §§ 1341 & 1343.

82.  Dennis Norden is the Vice President of Domestic Sales for Singing
Machine. Since at least 2003, he has conducted Singing Machine's business in the
United States through a pattern of racketeering activity, including at least the following
predicate acts:

a.  Repeated criminal violations of the copyright laws on Singing Machine's
karaoke recordings, under 17 U.S.C. § 506(a) and 18 U.S.C. § 2319. Each
copyrighted work was copied and distributed at least 10 times in a 180-day

23183233.DOC                                    37

period, with a total retail value far more than $2,500 for each copyrighted

work, including without limitation the following infringements:

| Song Title | Known Infringer/Album(s) |
| --- | --- |
| Babylon | Singing Machine/MTV Wanna Be A Rockster |
| Lose Yourself | Singing Machine/MTV Representin' Hip Hop |
| Steve McQueen | Singing Machine/MTV Pop Favorites |
| Beautiful Day | Singing Machine/Karaoke Pop Tunes; Singing Machine/Karaoke Tunes; Singing Machine/Karaoke Rock Vol. 8; Singing Machine/MTV Rock Hits Vol. 8; Singing Machine/MTV New Ballads Of Rock; Singing Machine/MTV 16 Songs |
| Stuck In A Moment | Singing Machine/MTV Rock This; Singing Machine/Hot Rock Vol. 2; Singing Machine/MTV Karaoke Rock This; Singing Machine/MTV Pop & Roll |
| Brown Eyed Girl | Singing Machine/Cool Classics Vintage 60s |
| Jump | Singing Machine/MTV 80s All Stars; Singing Machine/MTV80s Rockers |

b. On information and belief, for each karaoke recording sold to WEA,

starting in 2003 through the present, Singing Machine signed written

agreements in which each "represents that it has all the appropriate and

necessary licenses in order for WEA to sell [its] merchandise to WEA's

customers," reflecting licensing of 100% of the copyrighted interests.  On

information and belief, this agreement was transmitted by wires or mail, for

the purpose of defrauding WEA of its money and property, in violation of

18 U.S.C. §§ 1341 & 1343.

c.  On information and belief, from at least 2003 to the present, for each
karaoke recording sold to WEA, Singing Machine has provided written
certifications that it has all necessary licenses from each applicable music
publisher or copyright owner in order to lawfully publish, distribute and
sell Products throughout the United States and that each such license is
current, valid and paid in full, representing licensing of 100% of the
copyrighted interests. On information and belief, these were transmitted by
wires or mails, for the purpose of defrauding WEA of its money and
property, in violation of 18 U.S.C. §§ 1341 & 1343.

d.  On information and belief, Singing Machine has underreported sales and
royalties to licensors from whom it has obtained karaoke licenses,
including in written accounting and royalty statements transmitted through
the wires and the mails, for the purpose of depriving the licensors of their
money and property, in violation of the federal mail fraud and wire fraud
statutes, 18 U.S.C. §§ 1341 & 1343.

e.  On information and belief, for at least the last three years, Singing Machine
has regularly represented to copyright holders for split copyright
compositions from whom it seeks licenses that it will not use the songs
unless and until it has obtained licenses from all co-claimants of the
composition. On information and belief, these representations have been
made by mails and wires for the purpose of defrauding the copyright
holders of their money and property. In fact, Singing Machine regularly
uses compositions even when it does not have licenses from all copyright
holders. This constitutes a series of further acts of mail and/or wire fraud
under 18 U.S.C. §§ 1341 & 1343.

83.  These multiple acts of criminal copyright infringement, mail fraud and wire
fraud involve compositions owned by a large number of copyright holders, used on
hundreds of karaoke recordings, tens of thousands of copies of which were sold to

23183233.DOC                                           39

major retailers, and thousands of individual consumers. This activity has taken place over at least the last three years and continues to the present. This activity is part of a systematic practice by Defendants to avoid paying lawfully required fees for use of copyrighted compositions through the means described above. The infringements all are related in furtherance of a common purpose of avoiding legitimate business costs and expenses, and have the same or similar victims, including publishers and retailers. Songs infringing different compositions owned by different publishers also often appear on the same recordings and are sold as a single compilation.

84.    Sybersound is a competitor of the Corporation Defendants, and has suffered injury as a result of the Individual Defendants' violations of 18 U.S.C. § 1962(c). This injury includes without limitation diversion of business at major retailers to Defendants from Sybersound and undercutting Sybersound's prices in the karaoke marketplace. Sybersound also has suffered direct injury from infringements of the assigned TVT Music Publishing works identified herein. Sybersound is entitled to recover its damages in an amount to be proven at trial, trebled in accordance with 18 U.S.C. § 1964(c).

**FOURTH CLAIM FOR RELIEF**

**(Section 1962(a) of the Racketeer Influenced &**

**Corrupt Organizations Act, 18 U.S.C. § 1962(a))**

**(By Sybersound Against Defendants UAV, Madacy,**

**BCI, Audio Stream, Top Tunes and Singing Machine)**

85.    Sybersound repeats and incorporates by reference the allegations of paragraphs 1 through 84, as if fully set forth herein.

86.    Amos Alter, David Alter, Douglas Vogt, Richard Vogt, Edward Goetz, Frank Robertson and Dennis Norden are "persons" within the meaning of 18 U.S.C. §§ 1961(3) & (4).

87.    For at least the last four years, each of the Individual Defendants has been associated with one of the Corporation Defendants, as alleged in greater detail below.

23183233.DOC

40

**FIRST AMENDED COMPLAINT**

1    Each of the Corporation Defendants is a corporation or other legal entity, and therefore

2    an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

3        88.    The Corporation Defendants are and at all relevant times have been

4    engaged in and their activities have had an effect on interstate commerce, including the

5    sale of karaoke recordings between different states.

6        89.    As alleged above, each Defendant has engaged in a pattern of racketeering

7    activity, including without limitation the following "predicate acts" under 18 U.S.C. §

8    1961: repeated willful criminal infringements of copyright in violation of 17 U.S.C. §

9    506(a), and 18 U.S.C. § 2319; repeated acts of mail fraud in violation of 18 U.S.C. §

10   1341, and repeated acts of wire fraud in violation of 18 U.S.C. § 1343.

11       90.    These violations of law have generated millions of dollars in illegal

12   proceeds for Defendants from the sale of karaoke recordings without authorization and

13   without full payment of all required royalties and fees to copyright holders, and

14   through mail and wire fraud directed to customers and copyright holders.

15       91.    The proceeds from the illegal activities by UAV and its employees,

16   including Frank Robertson, have been used to reduce prices unfairly and undercut the

17   prices of lawful competitors such as Sybersound, and thereby have enabled UAV and

18   its employees to steal shelf space and market share from Sybersound.

19       92.    The proceeds from the illegal activities by Madacy and its employees,

20   including Amos and David Alter, have been used to undercut the prices of  lawful

21   competitors such as Sybersound, and thereby have enabled Madacy and its employees

22   to continue their unlawful business practices.

23       93.    The proceeds from the illegal activities by BCI and its employees,

24   including Edward Goetz, have been used to reduce prices unfairly and to undercut the

25   prices of lawful competitors such as Sybersound, and thereby have enabled BCI and its

26   employees to steal shelf space and market share from Sybersound.

27       94.    The proceeds from the illegal activities by Audio Stream and Top Tunes

28   and their employees, including Douglas and Richard Vogt, have been used to reduce

23183233.DOC                              41

FIRST AMENDED COMPLAINT

1  prices unfairly and to undercut the prices of lawful competitors like Sybersound, and

2  thereby have enabled Audio Stream and Top Tunes and their employees to shelf space

3  and market share from Sybersound.  In addition, the proceeds of the unlawful activity

4  by Top Tunes were used to form a newly named entity, Audio Stream, to continue the

5  business, and conceal the bad reputation Top Tunes had developed from its infringing

6  activity.

7     95.  The proceeds from the illegal activities by Singing Machine and its

8  employees, including Dennis Norden, have been used to undercut the prices of lawful

9  competitors such as Sybersound, and thereby have enabled Singing Machine and its

10  employees to continue their unlawful business practices.

11     96.  Sybersound is a competitor of each of the Corporation Defendants in the

12  sale of karaoke recordings to the same Customers.  The Corporation Defendants have

13  used the proceeds of the racketeering activity described above, to reduce prices

14  unfairly and to undercut Sybersound's prices, taking market share and diverting sales

15  from Sybersound to the Corporation Defendants.  The Corporation Defendants have

16  also used the proceeds of racketeering activity to continue their practice of distributing

17  infringing karaoke recordings in competition with Sybersound and other lawful

18  karaoke recording companies.  This injury is distinct and different from any injury

19  caused to the direct victims of the predicate acts.  Sybersound is entitled to recover its

20  damages in an amount to be proven at trial, trebled under 18 U.S.C. § 1964(c).

21              **FIFTH CLAIM FOR RELIEF**

22        **(Intentional Interference With Prospective Economic Relations)**

23            **(By Sybersound Against Defendants UAV, Madacy,**

24          **Audio Stream, Top Tunes, Singing Machine and BCI)**

25     97.  Sybersound incorporates by reference the allegations of paragraphs 1

26  through 95, as if fully set forth herein.

27     98.  Sybersound has  business and economic relationships with its Customers,

28  that have resulted in substantial economic benefit to Sybersound, and, absent

23183233.DOC                      42

1  disruption, would continue to result in further substantial economic benefit.  Each

2  Corporation Defendant, at all relevant times, has known of these relationships.

3       99.   Each Corporation Defendant intended to disrupt and has disrupted these

4  relationships by engaging in wrongful conduct.  As alleged in greater detail above, this

5  includes false and fraudulent representations to Sybersound's customers (1) that each

6  Corporation Defendant has valid karaoke licenses from copyright holders for 100% of

7  each song on its karaoke recordings, (2) that each Corporation Defendant is paying all

8  fees and royalties owed all copyright holders under licenses for songs on its karaoke

9  recordings and (3) that each Defendant is complying fully with the Customers' policies.

10 UAV and Madacy have further alleged falsely that Sybersound does not have valid

11 licenses for songs on its karaoke recordings sold to its Customers.

12      100. At all times, each Corporation Defendant knew these representations were

13 false.  The Corporation Defendants made these misrepresentations with the intent and

14 purpose of disrupting Sybersound's business relationship with its customers, and to

15 take market share and shelf space away from Sybersound's karaoke recordings.

16      101. Sybersound has been harmed because its ongoing business and economic

17 relationships with Customers have been disrupted.  The wrongful conduct of each

18 Corporation Defendant was a substantial factor in causing this harm.  As a direct and

19 proximate result of the foregoing Sybersound has suffered damages, the amount of

20 which will be proven at trial.

21      102. The acts of each Corporation Defendant alleged herein establish malice,

22 oppression and fraud and Sybersound is entitled to recover punitive damages from each

23 Corporation Defendant.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (By Sybersound Against Defendants UAV, Madacy,

### Audio Stream, Top Tunes, Singing Machine and BCI)

103. Sybersound repeats and incorporates by reference the allegations of paragraphs 1 through 102, as if fully set forth herein.

104. Section 17200 outlaws unfair competition, which "shall mean and include any unlawful, unfair or fraudulent business act or practice."

105. The foregoing acts constitute unlawful, unfair and fraudulent business acts or practices within the meaning of Section 17200.

106. Sybersound has suffered injury in fact and has lost money as a direct result of the Defendants' violations of Section 17200.

107. Pursuant to Cal. Bus. & Prof. Code § 17203, Sybersound is entitled to a preliminary and permanent injunction barring the Defendants from engaging in additional acts of unfair competition and for such restitution as permitted by law.

108. Sybersound's successful prosecution of these claims and forcing the Defendants to fully license their products will result in the enforcement of an important right affecting the public interest, and for that reason Sybersound is entitled to recover its attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

### (By Sybersound Against Defendants UAV, Madacy,

### Audio Stream, Top Tunes, Singing Machine and BCI)

109. Sybersound repeats and incorporates by reference the allegations of paragraphs 1 through 108, as if fully set forth herein.

110. Defendants, and each of them, are competitors of Sybersound.

111. Defendants, and each of them, have engaged in acts of unfair competition under California common law, including without limitation the acts alleged as a basis for Sybersound's Fourth Claim for Relief above.

112. As the direct and proximate result of the foregoing, Sybersound is entitled to a preliminary and permanent injunction barring the Defendants from engaging in additional acts of unfair competition, as well as damages.

113. Defendants have acted with malice, oppression and fraud and Sybersound is entitled to recover punitive damages from each Defendant.

## EIGHTH CLAIM FOR RELIEF

**(Unfair Trade Practices, Cal. Bus. & Prof. Code §§ 17000, *et seq.*)**

**(By Sybersound Against Defendants UAV, Madacy,**

**Audio Stream, Top Tunes, Singing Machine and BCI)**

114. Sybersound repeats and incorporates by reference the allegations of paragraphs 1 through 113, as if fully set forth herein.

115. Section 17043 prohibits any business from selling any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

116. Section 17026 defines "cost" to include the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor, plus the cost of doing business by the distributor and vendor.

117. Section 17209 defines the "cost of doing business" to include the cost of "all types of licenses" incurred in the course of conducting business.

118. By under-accounting and underpaying royalties for songs for which Defendants have valid karaoke licenses, and by failing to pay any royalties for other songs, Defendants have been able to sell their products below their real cost.

119. On information and belief, Defendants engaged in this behavior knowing that their below-cost sales would undercut the prices of their competitors, including Sybersound, which has properly accounted for royalties to all of its licensors and has

1    obtained all required licenses, and that Defendants specifically intended to injure
2    competitors including Sybersound and to destroy competition.

3        120.  Sybersound has been harmed as a result of Defendants' below-cost sales in
4    amounts to be proven at trial.

5        121.  Pursuant to Sections 17070, 17080 and 17082 of the California Business
6    and Professions Code, without limitation, Sybersound is entitled to a preliminary and
7    permanent injunction barring the Defendants from engaging in violations of the UPA.

8        122.  Sybersound is entitled to three times the amount of the actual damages that
9    it has suffered as a result of Defendants' violations, plus reasonable attorneys' fees and
10   costs of suit.

11                                    **PRAYER**

12       WHEREFORE, Plaintiff Sybersound demands relief as follows:

13   i.      For actual and/or statutory damages, in an amount to be proven at trial;

14   ii.     For punitive or exemplary damages, in an amount to be proven at trial;

15   iii.    For three times its actual damages pursuant to Business & Professions
16   Code § 17082 as well as pursuant to 15 U.S.C. § 1117(a) and 18 U.S.C. § 1964(c);

17   iv.     For an order for the delivering up, impoundment and destruction of all of
18   the Defendants' works used in furtherance of copyright infringement pursuant to 17
19   U.S.C. § 503 and/or in violation of the Lanham Act pursuant to 15 U.S.C. § 1118;

20   v.      For a permanent injunction barring Defendants' continued sale of pirated
21   karaoke records.

22   vi.     Applicable pre- and post-judgment interest;

23   vii.    The costs of this action, including reasonable attorneys' fees and expert
24   witness fees; and

25
26
27
28

viii.    Such other and further relief as the Court may deem just and proper.

Dated:  November 21, 2005                KAYE SCHOLER  LLP

By _____
                                J. Raymond Warner
Attorneys for Plaintiffs

## JURY DEMAND

PLAINTIFFS demand a trial by jury.

KAYE SCHOLER  LLP

Dated:  November 21, 2005

By _____
                                J. Raymond Warner
Attorneys for Plaintiffs

23183233.DOC                                    47



STATE OF CALIFORNIA                )
                                   ) ss.
COUNTY OF LOS ANGELES              )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1999 Avenue of the Stars, Suite 1600, Los Angeles, California 90067.

On November 21, 2005, I served the documents described as:

**FIRST AMENDED COMPLAINT FOR: 1) VIOLATION OF THE LANHAM ACT (15 U.S.C. §§ 1051, et seq.); 2) COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 1051, et seq); 3) VIOLATIONS OF RICO, 18 U.S.C. § 1962(c); 4) VIOLATIONS OF RICO, 18 U.S.C. § 1962(a) 5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; 6) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200, et seq.); 7) COMMON LAW UNFAIR COMPETITION; 8) UNFAIR TRADE PRACTICES CAL. BUS. & PROF.CODE §§ 17200, et seq.)**

by placing a true copy of the above entitled document in a sealed envelope addressed on the attached service list:

___    **by FACSIMILE**

___    **by U.S. MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

_X_    by **FEDERAL EXPRESS** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.

_X_    by **PERSONAL SERVICE**
       ___    by personally delivering such envelope to the addressee.
       _X_    by causing such envelope to be delivered by messenger to the office of the addressee.

___    (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_X_    (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 21, 2005, at Los Angeles, California.

_Shahnaz Virani_

23181722.WPD                                    PROOF OF SERVICE

KAYE SCHOLER LLP

SERVICE LIST
Sybersound Records, Inc., et al. v. UAV Corporation, et al.
United States District Court Case No. CV05-5861 (FMOx)

Daniel A. Johnson, Esq.
SULLIVAN JOHNSON LLP
601 S. Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone: (213) 239-9300
Facsimile: (213) 239-9301

Attorneys for Defendants
Top Tunes, Inc., Audio Stream, Inc.,
The Singing Machine Company, Inc.

Charles J. Sanders **(Via Fedex)**
29 Kings Grant Way
Briarcliff Manor, New York 10510
Telephone: (914) 366-6642
Facsimile: (212) 465-9274

Robert Aronson
9595 Wilshire Boulevard, #305
Beverly Hills, California 90212-2503
Telephone: (310) 278-8018
Facsimile: (310) 785-1720

Attorneys for Defendant
BCI Eclipse

Andre Bates
BAKER & HOSTETLER LLP
333 South Grand, Suite 1800
Los Angeles, California 90071
Telephone: (213) 975-1668
Facsimile: (213) 975-1740

Attorneys for Defendant
UAV Corp.

John D. Parker **(Via Fedex)**
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, Ohio 44114
Telephone: (216) 861-7610
Facsimile: (216) 696-0740

Martin D. Singer
Paul N. Sorrell
LAVELY & SINGER
2049 Century Park East, Sute 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Defendant
Madacy Entertainment LP

1